# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

ESTATE OF KELSEY WOLFE, )
b/n/f Next of Kin ROGER WOLFE and )
MESLISSA SISK as Administrator of the )
Estate of Kelsey Wolfe, )
                                  )
      Plaintiffs, )
                                  )
v. )     No.:     2:24-CV-158-DCLC-CRW
                                  )
COCKE COUNTY, TENNESSEE, )
SHERIFF ARMANDO FONTES, JAIL )
ADMIN. JOSH HARTSELL, and )
CPT. BOB SCHAFF, )
                                  )
      Defendants. )

## MEMORANDUM AND ORDER

Plaintiffs, by and through counsel, filed a civil rights complaint under 42 U.S.C. § 1983 related to the August 14, 2021, death of their daughter, Kelsey Wolfe, who was incarcerated at the Cocke County Jail [Doc. 1]. Before the Court is Defendants' converted motion for summary judgment [Doc. 12; *see also* Doc. 27], memorandum in support [Doc. 13], and statement of material facts [Doc. 14], to which Plaintiffs have responded in opposition [Doc. 19; *see also* Docs. 22, 23]. Upon consideration of the Parties' pleadings, the competent evidence, and the applicable law, Defendants' motion [Doc. 12] will be **GRANTED**, and this action will be **DISMISSED**.

## I.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the

nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Id.* at 323. That is, to successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

## II.     SUMMARY JUDGMENT EVIDENCE

Kelsey Wolfe was booked into the Cocke County Jail ("Jail") on December 11, 2020 [Doc. 12-2 ¶ 9]. Ms. Wolfe had been incarcerated in the Jail on multiple prior occasions on various criminal charges, including drug-related offenses [*Id.* ¶ 8]. During her incarceration, Ms. Wolfe obtained trustee status, which permitted her to perform job assignments in the Jail under less supervision and monitoring than non-trustee inmates [*Id.* ¶ 10].

Quality Correctional Health Care ("QCHC") provides medical care to inmates in the Jail through a contract with Cocke County [*Id.* ¶ 12]. For two days prior to her death, Ms. Wolfe reported feeling sick, and she had been treated by medical staff at the Jail [*Id.* ¶ 11].

At 8:30 a.m. on August 14, 2021, a nurse took Ms. Wolfe's vitals and recorded that Ms. Wolfe appeared lethargic and reported having been awake all the previous night [*Id.* at 6]. At approximately 12:30 p.m., the nurse drug screened Ms. Wolfe in her cell "due to suspicion" [*Id.*]. The drug screen was negative [*Id.*]. Nursing notes indicate that by 3:00 p.m. that day, Ms. Wolfe reported feeling better and having eaten some soup [*Id.*]. At 6:00 p.m., a nursing note describes Ms. Wolfe as more talkative and energetic and records that Ms. Wolfe reported feeling better and was planning to take a shower [*Id.*].

2

At around 7:35 p.m., Ms. Wolfe was captured on video obtaining items from her bunk, going to the sink and obtaining another item, and then entering the toilet area and closing a curtain [Doc. 12-2, Ex. A (annex_CH10_257_5_154_20210814213755_001 at 7:30–8:55[1])]. Some ten to thirteen minutes later, Ms. Wolfe appeared to become unresponsive, with her leg sticking out from under the curtain [Doc. 12-2, ¶ 14 and Ex. A at 22:02–22:33]. When correctional officers ("COs") discovered Ms. Wolfe, resuscitation efforts were attempted, including the administration of Narcan [Doc. 12-2, ¶ 15, pp. 9, 16; and Ex. A (annex_CH10_257_5_154_20210814214817_001 at 15:15–22:34].

Records indicate that the Jail called 911 at 8:32 p.m. [*Id.* at 15]. EMS removed Ms. Wolfe from her cell and transported her to the Newport Medical Center [*Id.* at 8, 16]. The on-call detective, Cocke County Deputy Sheriff Bob Schaff, responded to the scene to investigate the events and located drug paraphernalia, a syringe, and tobacco on the floor near where Ms. Wolfe was lying [*Id.* ¶¶ 4, 16, pp. 7–8, 16]. Ms. Wolfe was pronounced dead at the hospital at 9:21 p.m. [*Id.* at 9, 15–16]. Autopsy results indicate that Ms. Wolfe died at age 29 from an accidental fentanyl overdose [*Id.* at 9]. The results also note her history of intravenous drug abuse, Hepatitis C, and tobacco use [*Id.*]. The investigation following Ms. Wolfe's death did not reveal the source of the drugs she took [*Id.* ¶ 18].

The introduction of illegal drugs or similar contraband is prohibited and is against Cocke County policy [*Id.* ¶ 19]. "The County has previously terminated employees and prosecuted individuals, including correctional officers, who brought illegal drugs into the Jail" [*Id.*]. The COs employed at the Jail had received all training required by the Tennessee Corrections Institute

---

[1] The citations to the time stamp in the video exhibits should be considered approximate, despite the Court's attempts at accuracy.

("TCI"), and thus, the State of Tennessee, within the time limits set by the TCI at the time Ms. Wolfe was held in the Jail [*Id.* at ¶ 20]. And although Armando Fontes is the Sheriff of Cocke County, day-to-day operations of the Jail are assigned to Jail Administrator Josh Hartsell [Doc. 12-1 ¶¶ 2, 5; Doc. 12-2, ¶ 5]. Sheriff Fontes had no knowledge of any issues relating to Ms. Wolfe's incarceration; he learned of events leading up to her death because the investigation that followed her death [Doc. 12-1, ¶ 4].

## III.  ANALYSIS

In their complaint, Plaintiffs assert that Defendants violated Ms. Wolfe's rights under the Eighth and Fourteenth Amendments [Doc. 1 p. 5–10], and it references Cocke County's duties under State laws [*Id.* at 2 ¶¶ 5–6]. But Plaintiff's complaint is not sworn [Doc. 1 p. 10], and accordingly, the Court does not consider it evidence for summary judgment purposes. *Cf. El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (providing a sworn complaint "carries the same weight" as an affidavit for purposes of summary judgment); *see also M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021) ("[O]nce a party moves for summary judgment and identifies record materials showing no genuine dispute of material fact, the nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009))).

### A.  Section 1983 Claims

#### 1.  Individual Defendants

As an initial matter, Plaintiffs do not appear to seek to hold Defendants Sheriff Armando Fontes, Jail Administrator Josh Hartsell, or Captain Bob Schaff personally liable for Ms. Wolfe's death [*See* Docs. 1, 8, 13, 19]. The Sixth Circuit has stated that, where a plaintiff fails to specify the capacity of suit against a defendant, the court should assume the defendant is sued only in his

official capacity and construe a plaintiff's claims against each defendant individually only if the "course of proceedings" gives fair notice to the official that he was being sued personally. *Moore v. City of Harriman*, 272 F.3d 769, 772–73 (6th Cir. 2001). Factors relevant to the "course of proceedings" determination include the following:

> [T]he nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability.

*Vittetoe v. Blount Cnty.*, 861 F. App'x 843, 851 (6th Cir. 2021) (citing *Moore*, 272 F.3d at 772 n.1) (internal citations omitted). The test "also considers subsequent pleadings if they are filed in the early stages of litigation." *Id.*

Plaintiffs' complaint does not allege any facts suggesting personal involvement or action by Sheriff Fontes in relation to Ms. Wolfe [Doc. 1]. And it alleges only that Defendant Hartsell was appointed as "head jailer/administrator" and that Defendant Schaff "was responsible and or in the alternative assisted in the classifying, housing, and overseeing [Ms. Wolfe] while [s]he was in the custody of the Jail" [*Id.* ¶¶ 4, 7]. Further, the complaint seeks punitive damages, but it does so against the County only[2] [*Id.* at 8].

Defendants' answer noted Plaintiffs' failure to specify that Defendants were being sued individually and advised Plaintiffs that they interpreted the claims to be official-capacity claims only [Doc. 8, ¶ 50]. And following the filing of Defendants' answer, the Plaintiffs did not amend the complaint to assert suit against any Defendant in his official capacity. Therefore, the Court finds the course of proceedings does not place any Defendant on notice that he is sued personally, and any individual-capacity suit against these Defendants will be dismissed.

---

[2] The complaint also seeks punitive damages from "each and every county commissioner named in this Complaint" [Doc. 1 p. 9, 10]. But no commissioner is named in the complaint.

5

However, even if the complaint could be interpreted to provide notice to Defendants that they are sued individually, the Court finds that no reasonable jury could find that any of these Defendants bear personal liability in this lawsuit.

Under § 1983, each Defendant may be held personally liable only for his or her own misconduct. *See, e.g., Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Defendants may not be held liable based solely on their supervisory roles, as a theory of supervisory liability is impermissible in a § 1983 case. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Those who supervised Jail or medical staff, for example, must have "implicitly authorized, approved or knowingly acquiesced in" the staff misconduct in a way that showed their own deliberate indifference. *Crawford v. Tilley,* 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)). That is, a supervisory official must have done "more than play a passive role in the alleged violation . . . . [as] [s]upervisory liability under § 1983 cannot attach where the allegation of liability is based on a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

6

Plaintiffs have not alleged any facts, much less presented competent evidence, of "active unconstitutional behavior" by any of the named Defendants that would state an actionable claim. *See Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The undisputed facts establish that no named Defendant had any personal involvement in the events leading up to Ms. Wolfe's death [Docs. 12-1, ¶ 4; 12-2, ¶ 4]. And while Defendant Hartsell was the day-to-day supervisory authority for the Jail, the evidence indicates he took no direct action that would render him liable under supervisory standards [Doc. 12-2, ¶¶ 5–6]. Accordingly, all individual-capacity claims against Defendants will be dismissed.

### 2.    Official-Capacity Claims

An official capacity claim against a government official "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Accordingly, the Court will dismiss Plaintiffs' claims against Defendants in their official capacities as redundant to their claims against Cocke County. *See, e.g., Foster v. Mich.,* 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official capacity claim is redundant."); *Schirmer v. Powell Cnty. Det. Ctr.*, 685 F. Supp. 3d 459, 463 (E.D. Ky. 2023) (dismissing as redundant official-capacity claims against sheriff and jailer where same claims were raised against governmental entities).

### 3.    Cocke County

"[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Accordingly, Plaintiffs cannot recover against Cocke County "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, it is subject to liability only where "execution of a government's policy or custom, whether

7

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.*

Such claims, commonly referred to as *Monell* claims, require a plaintiff to show "an affirmative link between [a county's] policy or custom and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Thus, to hold Cocke County liable under *Monell*, "a plaintiff must identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted).

"The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Id.* at 415.

Plaintiffs maintain that dangerous or defective conditions at the Jail caused or contributed to Ms. Wolfe's death [Doc. 1, ¶¶ 11–14]. They further allege that Defendants knew or should have known of Ms. Wolfe's issues with drug dependency and/or mental health concerns, but they failed to properly evaluate her upon intake and place her on a special status that would allow her conditions to be monitored, despite being on notice of multiple overdoses and/or medical failures in the Jail [*Id.* ¶¶ 20–25].

Ms. Wolfe was presumably a pretrial detainee during all times relevant to this action. And a prison official's failure to protect a pretrial detainee rises to the level of a constitutional violation

only where the detainee was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), to which the prison official "acted (or failed to act) deliberately and recklessly[,]" *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022) (citing *Brawner v. Scott Cnty.*, *Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)). A constitutional violation occurs under this standard where the official "[1] act[ed] intentionally in a manner that [2] put[] the [detainee] at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[d] the [detainee]'s injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729).

But "simple exposure to drugs" does not satisfy this standard. *Zakora v. Chrisman*, 44 F.4th 452, 472 (6th Cir. 2022). Plaintiffs contends that summary judgment is inappropriate because Defendants' "inability to explain how fentanyl entered their jail is itself evidence of a systemic failure" that supports a finding of municipal liability under *Monell* as a matter of law [Doc. 19, p. 3]. But Plaintiffs cite no authority for this proposition. And such a position defies Sixth Circuit precedent. The Sixth Circuit has expressly stated that "[p]rison officials are not required to show that they have prevented all drugs from entering their facility in order to be protected from liability." *Zakora*, 44 F.4th at 472. Instead, in a failure-to-protect case involving a drug overdose, a plaintiff can establish an "objectively excessive risk" by showing: (1) a "widespread presence of drugs" at the facility; (2) immediate prior overdoses; and (3) the failure to investigate those overdoses. *Caraway v. CoreCivic of Tenn.*, LLC, 98 F.4th 679, 684 (6th Cir. 2024). Plaintiffs have not presented any evidence of any of these factors.

Instead, it is undisputed that Cocke County policy prohibits the introduction of illegal drugs and/or contraband into the Jail; it prosecutes those who violate that policy; COs employed at the Jail receive the training required by the State of Tennessee; Ms. Wolfe was booked into the Jail over 8 months before her death and had obtained trustee status at the time of her death; Ms. Wolfe

9

took a drug screen hours before her death that yielded a negative result; and an investigation into Ms. Wolfe's death did not reveal the source of the drugs she took. Therefore, even viewing the facts in the light most favorable to Plaintiffs, their failure-to-protect clam fails.

As to Plaintiffs' claim that Cocke County is liable for failing to provide Ms. Wolfe with adequate medical care, Plaintiffs can sustain such a claim by demonstrating that (1) Ms. Wolfe had a sufficiently serious medical need, and (2) Defendants responded to that serious need "deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citations omitted). Here, however, the undisputed evidence is that Cocke County contracted with QCHC to provide medical care at the Jail [Doc. 12-2 ¶ 12]. An officer who is not medically trained typically does "not act with deliberate indifference to a detainee's medical needs when they reasonably defer to a medical professional's diagnosis or treatment." *Grote v. Kenton Cnty.*, 85 F.4th 397, 412 (6th Cir. 2023) (citing *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017)).

Moreover, the undisputed evidence is that (1) medical providers had been providing Ms. Wolfe with care, and she reported feeling better shortly before her ingesting the drugs that caused her death [Doc. 12-2 ¶¶ 11–13]; and (2) COs summoned medical assistance upon finding Ms. Wolfe unresponsive [Doc. 12-2, ¶¶ 11–13, ¶ 15; and Ex. A (annex_CH10_257_5_154_20210814214817_001 at 15:15–22:34]. And Plaintiffs have produced no contrary proof indicating that any CO or County officer responded recklessly to "an unjustifiably high risk of harm" to Ms. Wolfe. *Helphenstine*, 60 F.4th at 317. Therefore, even viewing the facts in the light most favorable to Plaintiffs, any claim for the denial of adequate medical care fails.

Thus, Plaintiffs have not set forth any evidence from which a reasonable jury could that Ms. Wolfe's constitutional rights were violated. And where no violation of constitutional rights has occurred, a municipality cannot be liable under *Monell*. *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) ("[T]here can be no liability under *Monell* without an underlying constitutional violation." (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014))). Accordingly, Cocke County is entitled to summary judgment as to all federal claims against it.

## B. State-Law References

Although Plaintiffs' complaint makes reference to Tennessee statutes [*see* Doc. 1 ¶¶ 5–6], it does not assert any actual claims under State law [*Id.* ¶¶ 24–44]. The complaint also fails to set forth specific allegations to support a State-law claim. Because Plaintiff has failed "to state the facts upon which a claim for relief is founded" under Tennessee law, Defendants are entitled to summary judgment as to any intended State-law claims against them. *Webb v. Nashville Area Habitat for Humanity, Inc*., 346 S.W.3d 422, 426 (Tenn. 2011).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion [Doc. 12] is **GRANTED**, and this action will be **DISMISSED**.

**SO ORDERED.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/Clifton L. Corker
United States District Judge

11